**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**BOBBY BANKS, ET AL.**                                                                               **PLAINTIFFS**

**V.**                                                                              **CASE NO. 1:14-cv-398-LG-RHW**

**DIRECTV, LLC AND MULTIBAND CORP.**                                             **DEFENDANTS**

**DIRECTV LLC'S MEMORANDUM BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS**

DIRECTV, LLC ("DIRECTV") submits this memorandum brief in support of its Motion to Dismiss all of the Plaintiffs' FLSA claims pursuant to F.R.C.P. 12(b)(6) and, as necessary and appropriate, to dismiss the minimum wage claims asserted by 8 of the 16 Plaintiffs. DIRECTV would further show unto the Court as follows:

**I.      INTRODUCTION**

Plaintiffs are 16 current and former satellite television technicians. This suit represents the second or third attempt by all of them to seek recovery from DIRECTV for violations of the minimum wage and overtime provisions of the FLSA. Although it is now well established that the resolution of a worker's FLSA claims requires a detailed, individualized analysis, Plaintiffs again fail to allege any facts specific to their own work experiences. Rather, Plaintiffs assert generalized and conclusory allegations that DIRECTV may be held liable under the FLSA as their "joint employer" because of the alleged control DIRECTV exerted over the work and pay of all technicians through a tiered or multi-level "employment network" made of up of (1) DIRECTV, (2) Home Service Providers, (3) Secondary Service Providers, (4) subcontractors, and (5) plaintiffs/technicians.

However, Plaintiffs have not described the level of control over their work and pay exercised by the subcontractors with whom they have or had the most direct relationship or anyone else (other than DIRECTV and Multiband).  Indeed, the complaint identifies 23 separate subcontractors and providers with no description whatsoever of their interaction with any of the Plaintiffs.  In this light, it is very telling that the uniform system of control alleged by Plaintiffs – over which many other providers and subcontractors exercised some control – yield anything but uniform results for the Plaintiffs:

| Plaintiff | Avg. Weekly Hours | Avg. Wages (Gross) | Avg. Wages (Net) | Avg. Hourly Wage (Net) | FAC[1] |
|---|---|---|---|---|---|
| Zanerio Dogan | 78 hours | $1,400 | $1075[2] | $13.78 | ¶ 108 |
| Richard Phillips | 48 hours | $750 | $ 633 | $13.19 | ¶ 126 |
| Aric Riley | 58 hours | $1,000 | $ 729 | $12.57 | ¶ 132 |
| Van Roden | 70 hours | $1,100 | $ 740 | $10.57 | ¶ 144 |
| A. Vardamann | 60 hours | $1,000 | $ 627 | $10.45 | ¶ 174 |
| Larry Sanders | 59 hours | $850 | $ 508 | $ 8.61 | ¶ 156 |
| Shun Thomas | 70 hours | $1,100 | $ 595 | $ 8.50 | ¶ 168 |
| Eric Gomez | 75 hours | $950 | $ 582 | $ 7.76 | ¶ 120 |
| Em. Stallworth | 75 hours | $825 | $ 419 | $ 5.59 | ¶ 162 |
| Bobby Banks | 70 hours | $900 | $ 275 | $ 3.93 | ¶ 95 |
| William Frazier | 50 hours | $825 | $ 190 | $ 3.80 | ¶ 114 |
| Marcus Simpson | 70 hours | $675 | $ 258 | $ 3.69 | ¶ 186 |
| Sheldon Watts | 60 hours | $600 | $ 194 | $ 3.23 | ¶ 180 |
| Timothy Dogan | 80 hours | $800 | $ 125 | $ 1.56 | ¶ 102 |
| Ricky Romines | 75 hours | $450 | $ 15 | $ 0.20 | ¶ 150 |
| Christopher Roberts | 72 hours | $300 | ($55) | ($0.76) | ¶ 138 |

The Plaintiffs worked different hours (between 48 and 80 hours), were paid different amounts (between -$55 and $1,705), alleged different chargebacks and business expenses

---

[1] The First Amended Complaint [Doc. 17] is abbreviated FAC throughout.  The figures reflected in the chart are derived from information contained at the cited provisions of the FAC.

[2] This amount represents the net income Plaintiffs earned per week after subtracting weekly chargebacks and other out of pocket expenses.

(between $117 and $635), and have widely divergent effective hourly pay rates (between -$0.76 and $13.78).  *See* Exhibit A, Breakdown of Claimed Wages.  Indeed, 8 of the 16 Plaintiffs made more than the minimum wage, which has been $7.25 at all pertinent times, and thus fail to state claims for minimum wage violations under the FLSA.

Plaintiffs simply cannot seek to establish liability against DIRECTV under the "joint employer" doctrine without having alleged that another company also "employed" them.  Indeed, Plaintiffs cannot assert a plausible claim for recovery against DIRECTV under the "joint employment" doctrine without sufficiently detailed allegations that demonstrate the plausibility of their contention they were "employed by" their direct subcontractors, rather than properly classified as independent contractors.  Evaluation of the Plaintiffs' employment status is a detailed inquiry in and of itself.  Yet, Plaintiffs' complaint contains no allegations whatsoever as to their relationship with these companies.

Therefore, for these reasons, as set forth in more detail below, DIRECTV respectfully requests this Court to dismiss DIRECTV pursuant to Rule 12(b)(6) for failure of the Plaintiffs to assert a plausible claim for recovery against it as a "joint employer" under the FLSA.  DIRECTV also moves to dismiss the minimum wage claims of the 8 plaintiffs who fail to state such claims.

## II.   BACKGROUND

### A.   Plaintiffs' Prior Multi-Plaintiff Suits

Thirteen of the Plaintiffs – Banks, T. Dogan, Frazier, Gomez, Phillips, Roberts, Roden, Romines, Sanders, Stallworth, Thomas, Vardaman and Watts – opted-in to an FLSA collective action in *Lang v. DIRECTV, et al.*, Case No. 10-1085-NJB (E.D. La.).  The *Lang* case was pending in the District Court for the Eastern District of Louisiana until that Court decertified the

conditionally certified collective and dismissed the claims of the opt-ins without prejudice. *See* FAC, ¶ 87.

These same 13 Plaintiffs – along with Z. Dogan and Riley – then attempted to pursue their FLSA claims in another 278-plaintiff case (with plaintiffs from 30 different states) filed in the District Court for the Central District of California in the case of *Acfalle v. DIRECTV, et al*. *See* FAC, ¶ 88.  In response to the defendants' motion to sever the plaintiffs' claims, the Court dismissed the claims of certain plaintiffs without prejudice to their right to refile claims in a court closer to their home state or where they were employed.  *See id.*[3]  *See also Acfalle* 7/22/2014 Order, attached hereto as Exhibit B.

The last Plaintiff in this case, Simpson, previously filed a consent to become a party plaintiff for a conditionally certified FLSA class in the case of *Arnold v. DIRECTV, et al.*, Case No. 10-0357-JAR (E.D. Mo.), which is currently pending in the District Court for the Eastern District of Missouri.  *See* FAC ¶ 90.  Though several Plaintiffs have been dismissed from that suit, Simpson remains a party plaintiff in that case.  *See id.* ¶ 90 n.5.

In addition to this case, approximately 40 other "cookie-cutter" cases have been filed against DIRECTV (and in most instances one or more HSPs) alleging FLSA violations.  The MDL panel recently denied Plaintiffs' bid to transfer 11 of those cases – including *Bobby Banks* – to Multi-district litigation pursuant to 28 U.S.C. § 1407.  The MDL panel found that consolidation would "not serve the convenience of the parties and witnesses" and would not "further the just and efficient conduct of this litigation."  *See* Ex. C., MDL Panel Order of Feb. 2, 2015 at 2.  In doing so, it highlighted the importance of the highly individualized evaluation of each plaintiff's claims and his or her relationship with the "potentially hundreds of [different] subcontracting entities":

---

[3] The Court dismissed the claims of plaintiffs who were only asserting FLSA claims.

4

> Despite the overlap in plaintiffs' allegations and the number of pending cases, we are not convinced that centralization will deliver significant benefits. . . . The issue of whether an individual is an employee or an independent contractor involves multiple factors, which require individualized inquiry.  The motion practice directed to the individual claims of nearly 500 plaintiffs, which implicate over 30 state laws, very well could overwhelm a single judge.  Plaintiffs worked for potentially hundreds of subcontracting entities, which plaintiffs characterize as fly-by-night operations, and inquiry into those non-parties may prove complicated and require significant localized efforts.  Denying centralization will keep the actions pending in the state where plaintiffs worked and where, presumably, relevant witnesses and documents may be found.

MDL Order of Feb. 2, 2015 at 2.

### B.     Brief Summary of First Amended Complaint.

Consistent with these prior suits, Plaintiffs again refuse to flesh out the individualized circumstances specific to each plaintiff that are fundamental to the maintenance of their FLSA claims.  Plaintiffs have not all asserted claims they had a direct relationship with DIRECTV.[4] Rather, Plaintiffs allege they worked for different companies that either contracted with DIRECTV or with other providers and subcontractors.  *See* FAC ¶¶ 93, 99, 105, 111, 117, 123, 129, 135, 141, 147, 153, 159, 165, 171, 177, 183.  Plaintiffs seek to hold DIRECTV liable as their "joint employer" under the FLSA with these other providers and subcontractors.  *See generally id.* ¶¶ 52-69.

However, Plaintiffs have not identified the subcontractors with whom they had a direct relationship, let alone described the control those companies exercised over their work and pay.  Indeed, Plaintiffs acknowledge they were paid through the various providers' "payroll and paycheck systems."  FAC ¶ 56.  While Plaintiffs allege that DIRECTV set the rate of pay made to providers for the installation work that Plaintiffs performed, they do not allege that DIRECTV

---

[4] The FAC is vague.  However, Plaintiffs Richard Phillips, Ricky Romines, and Marcus Simpson may be attempting to allege they were W-2 employees of DIRECTV for some period of time.  *See* FAC ¶¶ 122,146, 182.

set the rate and method of payment of wages that the Plaintiffs actually received from their direct employer. *Id.* They also admit that there was "no contract, memorandum, or other document" between Plaintiffs and DIRECTV memorializing or explaining how Plaintiffs were paid. *Id.* ¶ 74.

Instead, Plaintiffs assert conclusory allegations of a uniform system orchestrated by DIRECTV to control the work and pay of individual technicians who install and repair DIRECTV satellite television equipment. Plaintiffs essentially allege that DIRECTV exerted control over Plaintiffs' work through assigning work orders, requiring equipment to be installed using particular methods and standards of installation, performing quality control inspections of the work performed by Plaintiffs, and requiring Plaintiffs to wear a uniform containing a DIRECTV logo and to display a DIRECTV logo on vehicles driven to customers' homes. *See, e.g.*, FAC ¶¶ 1, 36, 40, 41, 43, 55, 62. As to their pay, Plaintiffs allege they were paid on a piece rate basis for their work, and this system did not include overtime pay or otherwise satisfy the minimum wage requirements of the FLSA. *See id.* ¶¶ 70-86. As alluded to above, however, the application of this supposedly uniform system – over which numerous providers and subcontractors exercised control – yielded anything but uniform results. Plaintiffs work and pay varied significantly.

### III. DISCUSSION

#### A. Rule 12(b)(6) Standard under *Iqbal* and *Twombly*

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint against the pleading requirements set forth in Rule 8 of the Federal Rules of Civil Procedure. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court has explained, the purpose of the rule is to "give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In order to survive a motion to dismiss, a cause of action must be supported by "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Under this standard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). As a result, even a complaint that pleads facts that are consistent with a defendant's liability is insufficient. *Id.* Rather, the facts in the complaint must allow the court to reach a reasonable inference that the defendant is liable. *Id.*

As the Supreme Court explained, courts should not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. Mississippi courts have likewise reiterated this rule in multi-plaintiff cases over the last ten years, cautioning that "[c]omplaints should not be filed in matters where plaintiffs intend to find out in discovery whether or not, and against whom, they have a cause of action." *Harold's Auto Parts, Inc. v. Mangialardi*, 889 So.2d 493, 494 (Miss. 2004)).

The requirement of plausibility articulated in *Iqbal* and *Twombly* applies to minimum wage and overtime claims brought under the FLSA. *See Landers v. Quality Communications,* 771 F.3d 638 (9th Cir. 2014) (affirming dismissal of a minimum wage and overtime FLSA claim brought by technicians paid on a piece-rate basis where Plaintiff failed to plead facts necessary to

state a plausible claim). These rules are of even more significance here since Plaintiffs have been litigating the same claim against DIRECTV for years.

> **B.   Plaintiffs' Complaint Fails to State Plausible FLSA Claims Against DIRECTV Based on its Alleged Status as Their "Joint Employer" under the FLSA.**

"To be bound by the Fair Labor Standards Act, one must be an 'employer.'" *Reese v. Coastal Restoration & Cleaning Servs.*, 2010 WL 5184841, \*3 (S.D. Miss. Dec. 15, 2010) (J. Walker). Plaintiffs seek to establish liability against DIRECTV on the theory that DIRECTV was their "joint employer" under the FLSA. The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). In determining whether an individual or entity is an employer, courts analyze the "economic reality" of the relationship between the parties. *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014). There are four factors used to determine whether an entity may be held to be a joint employer under the FLSA: "whether the alleged employer: (1) possessed the power to hire and fire plaintiff, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.*

The evaluation of these factors reveals that Plaintiffs' allegations are not sufficient to state a claim that DIRECTV was Plaintiffs' "joint employer." Indeed, Plaintiffs all but concede three of the elements, choosing instead to rely exclusively on the "supervision and control" factor. *Compare Altier v. Worley Catastrophe Response, LLC*, 2001 WL 1791292, \*3 (E.D. La. May 9, 2011) (dismissing FLSA claims where complaint only addressed one factor of economic reality test).

> **1.   Plaintiffs have not stated a plausible claim against DIRECTV under the "joint employer" doctrine because they do not allege they were**

**"employed" by another company with whom they had a direct relationship, let alone the actions taken by that company regarding their work and pay.**

In the complaint, Plaintiffs portray a uniform system by which DIRECTV supposedly controlled the work (and pay) of all individuals who installed and repaired DIRECTV satellite television equipment. Plaintiffs allege there many different parties and "tiers" of "levels" of companies involved in the "employment network," including (1) DIRECTV, (2) Home Service Providers; (3) Secondary Service Providers; (4) Subcontractors; and (5) technicians (Plaintiffs). FAC, ¶ 27.  However, this allegedly "uniform" system yielded anything but "uniform" results in Plaintiffs' scope of work and pay.  The Plaintiffs worked different hours, received different gross wages, allege different "charge backs" and business expenses, and had widely divergent hourly wage rates.  *See* Ex. A.

In this way, the complaint clearly reflects the highly individualized experiences of each plaintiff.[5]  The complaint offers no justification or explanation of these significant discrepancies. Yet, what Plaintiffs have refused or failed to allege is (1) the identity of the subcontractors with whom they had the most direct relationship (by contract or otherwise); and (2) any description of the level of control exercised by these parties (let alone other intermediate parties) over the work and pay of each Plaintiff.  While Plaintiffs identify, by name only, 23 discrete providers and subcontractors for whom they worked as technicians – some plaintiffs allegedly worked for as many as 8 companies, and some as few as 4 – they have not described any of these companies' respective roles.[6]  This factual evidence of Plaintiffs' flexibility in whom they worked for

---

[5] Rather than focus the allegations of the complaint on the experiences of the individual plaintiffs, the operative complaint still reads as one asserted on behalf of a purported collection action in many respects.

[6] It is unclear whether these listings are exhaustive and include the "fly-by-night operations" with whom plaintiffs had the most direct relationship.  *See* MDL Panel Order at 2.

undermines any contention of permanence of that economic necessities or control bound Plaintiffs to DIRECTV.

Fundamentally, Plaintiffs do not sufficiently allege that DIRECTV was their "joint employer" unless they also allege they were "employed" under the FLSA by another company with whom they have or had a direct relationship. In this case, Plaintiffs have not identified any of the companies with whom they had a direct relationship, let alone the level of control exercised by those companies. As a result, Plaintiffs have not sufficiently alleged that DIRECTV was their "joint employer." <u>In the parlance of Rule 12(b)(6), Plaintiffs have not stated a plausible claim against DIRECTV under a "joint employment" theory without sufficiently alleging that another party was also their employer</u>. *Compare Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'").

This deficiency in the complaint is not easily cured or explained away. The determination whether an individual is an "employee" or "independent contractor" is just as detailed and individualized as the "joint employer" test.[7] As such, Plaintiffs may not satisfy *Iqbal* or *Twombly* with mere labels or conclusions as to their relationship with these other companies. Rather, they must set forth specific facts demonstrating their contentions regarding the company in order to allege "more than a sheer possibility" of a claim against DIRECTV. *Iqbal*, 556 U.S. at 678-79. *See, e.g.*, *Howard v. John Moore, LP*, 2014 WL 1321844 (S.D. Tex.

---

[7] To determine whether a worker qualifies as an employee under the FLSA or an independent contractor, the Fifth Circuit considers "five non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *Hopkins v. Cornerstone America*, 545 F.3d 338, 343 (5th Cir. 2008).

March 31, 2014) (finding that assertion of "claims against multiple employees ignores the fact-specific nature of the employer-status inquiry under the FLSA"; noting plaintiff's failure to allege "how the events that gave rise to this lawsuit were allocated [among] the [five] defendants . . . [or] how his employment was handled generally."; and stating that "[a]t least some facts of the employment relationship must be set forth in order to make out a facially plausible claim of joint employer liability under the FLSA"); *Escobedo v. Metal Protective Coating Professionals, Inc.*, 2013 WL 6504675, *2 (S.D. Tex. Dec. 11, 2013) (dismissing FLSA complaint under *Iqbal/Twombly* which "lack[ed] factual allegations" such as "who forced [employee] to work in excess of forty hours per week," "how his employment was handled generally," "who hired him or had the ability to fire him," "who supervised and controlled his day-to-day activities," and "who determined what, how, and when he was paid, and the like"); *Watson v. Graves*, 909 F.2d 1549, 1556 (5th Cir. 1990) ("This court still must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test.").

Indeed, this Court recently presided over the trial of a collective action under the FLSA brought by plaintiffs who installed DIRECTV satellite television equipment for Media Net. The jury found that plaintiffs were not "employed by" Media Net – a provider identified in *Banks* – and a defense verdict was entered. *Eberline et al. v. Media Net*, Case No. 1:13cv-100 (S.D. Miss.). Similarly, in *Scruggs v. Skylink Ltd.*, 2011 WL 6026152 (S.D. W.V. Dec. 2, 2011), the court dismissed the claims of a technician who installed DIRECTV equipment, as against the subcontractor with whom he had a direct relationship, upon finding that he was an independent contractor, and not an employee, of the subcontractor. *See also Everett v. PP&G, Inc.*, 2014 U.S. Dist. LEXIS 76522, *7-8 (D. Md. June 5, 2014) (holding that plaintiffs failed to state facts sufficient to allege a plausible independent contractor misclassification claim against individual

11

defendant, where complaint stated in conclusory fashion that exhibited "the characteristics that have been held by courts to indicate an employer-employee relationship" but provided "no factual examples of such conduct"). In addition, numerous other courts have found that a defendant in the shoes of DIRECTV could not be held liable as "joint employer" under the FLSA. *See Thornton v. Charter Comms., LLC*, 2014 U.S. Dist. LEXIS 135523 (E.D. MO. Sept. 25, 2014) (finding that Charter Communications was not "joint employer" of individuals who performed cable, internet and telephone services for company engaged by Charter); *Zampos v. W&E Comms., Inc.*, 970 F. Supp.2d 794 (N.D. Ill. 2013) (finding Comcast was not "joint employer" of technicians who installed and serviced Comcast products for W&E Communications); *Valdez v. Cox Communications*, 2012 U.S. Dist. LEXIS 50574 (D. Nev. Apr. 11, 2012) (finding Cox Communications was not "joint employer" of technicians who worked on projects for Cox); *Lawrence v. Adderly Indus., Inc.*, 2011 U.S. Dist. LEXIS 14386 (E.D.N.Y. Feb. 11, 2011) (finding Cablevision was not "joint employer" of technicians who provided installation and repair services for Cablevision's customers); *Jacobson v. Comcast Corp.*, 740 F. Supp.2d 683, (D. Md. 2010) (finding Comcast was not "joint employer of technicians employed by various installation companies to perform jobs for Comcast); *Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp.2d 667, 677 (D. Md. 2000) (Comcast was not the "employer" of its contractor's employees).

In each of the above cited cases, the courts performed detailed evaluations of the circumstances under which plaintiffs performed their jobs and were influenced by the company which engaged them. These cases put in practice the now well established standard, acknowledged by the MDL panel, that evaluation of employment status "involves multiple factors, which require individualized inquiry." *See, e.g.*, MDL Panel Order at 2 (Exhibit C).

Plaintiffs' complaint does not contain any of the necessary allegations to show their interaction with their direct subcontractors.

And finally, in response to Plaintiffs' allegations they wore DIRECTV uniforms, drove DIRECTV trucks, and performed work according to DIRECTV's policies and practices, several courts have held that these are merely "quality control" measures that do not affect the economic relationship of the parties and, instead, may be done to "allow[] consumers to be assured of the [technician's] *bona fides*" to work on their property. *Thornton*, 2014 U.S. Dist. LEXIS 135523, *47; *Lawrence*, 2011 U.S. Dist. LEXIS 14386, *25. In fact, Magistrate Judge Walker has similarly found that a detailed agreement between an individual's employer and its franchisor were merely evidence of "quality control standards" utilized by the franchisor before allowing the employer to use "its system, trade name, service marks, trademarks, etc." *Reese v. Coastal Restoration & Cleaning Servs., Inc.*, 2010 WL 5184841, *4 (S.D. Miss. Dec. 15, 2010). Judge Walker also found that a section of the agreement setting forth the "standards" imposed by the franchisor on the employer's work was simply "one of the conditions for acquiring or renewing a franchise." *Id.* In that case, Judge Walker ultimately held that the franchisor was not the "joint employer" of the plaintiff.

In summary, Plaintiffs cannot state a plausible claim against DIRECTV on a "joint employer" theory without sufficient allegations identifying and demonstrating that another more direct company is also their employer under the FLSA. Indeed, the plausibility of Plaintiffs' allegations of control against DIRECTV are belied by the widely divergent work performed by the individual plaintiffs (and pay received by them) under the allegedly "uniform" system.

> **2. Plaintiffs' Complaint does not Satisfy the Other Elements of the Economic Reality Test.**

Plaintiffs' complaint is devoid of allegations on the other elements of the economic reality test.

Plaintiffs do not allege that DIRECTV (1) hired or fired technicians. Rather, Plaintiff suggests that DIRECTV had the right to insist that any technician who failed to "pass pre-screening and background checks, and obtain a certification from the Satellite Broadcasting & Communications Association . . . before that technician may be assigned DIRECTV work orders." FAC ¶ 60. It is well-established that "quality control measures" such as these checks do not demonstrate the power to hire and fire. *See Reese*, 2010 WL 5184841, \*4 (rejecting argument that section of franchise agreement requiring background checks and setting forth prohibition against employment of individuals with convictions for felonies or any assault show franchisor's "power to hire/fire"). In addition, although 12 of the 16 plaintiffs are no longer installing DIRECTV systems, none of them allege how their employment was terminated, let alone that DIRECTV terminated them.

Plaintiffs do not allege that DIRECTV paid the technicians directly. Rather, the cryptic complaint reads: "Through the Provider Network DIRECTV utilized its Providers' payroll and paycheck systems to administer its piece-rate compensation scheme, including issuing paychecks to Plaintiffs." FAC, ¶ 56. Respectfully, Plaintiffs have not sufficiently alleged that (3) DIRECTV "determined the rate and method of pay" for the technicians. Plaintiffs have not explained, as necessary and appropriate to support claims against DIRECTV, what control the subcontractors with whom plaintiffs had a direct relationship had on their pay. Even if it is not sufficient to rely solely upon common sense to appreciate that a subcontractor has the ability to influence the amount it pays those with whom it contracts for work, the complaint filed in this case removes any doubt about the work and pay discrepancies experienced by the Plaintiffs

under the supposedly "uniform" system orchestrated by DIRECTV. *See also Jean-Louis v. Metro Cable Comms., Inc.*, 838 F. Supp.2d 111, 129-30 (S.D. N.Y. 2011) (what a cable company pays a contractor for services may affect technicians' pay, but does not determine it).

Finally, Plaintiffs do not allege (4) that DIRECTV maintained employment records for them. Again, cryptically, Plaintiffs' complaint states that "Multiband maintained, among other documents, a contractor file for each technician working under their aegis as an ostensible independent contractor . . . . The contents of these contractor files were regulated and audited by DIRECTV." FAC, ¶ 33. This allegation is not sufficient either. *See Reese*, 2010 WL 5184841, \* (finding that franchisor's contractual right to access employment records did not establish that it maintained those records).

* * *

In summary, Plaintiffs have not stated a plausible claim that DIRECTV was their joint employer because (1) they have not alleged they were "employed" by the multiple subcontractors with whom Plaintiffs had the most direct relationship; (2) they fail to assert any allegations as to the level of control over Plaintiffs' work and pay exercised by those companies; (3) their allegations do not demonstrate a plausible claim that DIRECTV was their "joint employer" under the FLSA; and (4) they do not otherwise satisfy the economic reality test as to DIRECTV.

**C.  Eight (8) of Sixteen (16) Plaintiffs Fail to State Claims for Violation of the Minimum Wage Provisions of the FLSA.**

The crux of Plaintiffs' minimum wage claims is that they were "routinely" subjected to working at a wage rate less than the applicable minimum wage because they were not compensated for all hours worked, DIRECTV did not reimburse them for all necessary business expenses and they were subject to "charge backs" from their pay. Under the FLSA, employees

15

must be compensated at a rate of $7.25 per hour.  *See* 29 U.S.C. § 206(a)(1)(C).  An employer does not violate the minimum wage provisions of the FLSA when its "employees' weekly wage, when divided by the number of hours [that employee] worked [in the week], exceed[s] the minimum wage amount in effect."  *See Sandoz v. Cingular Wireless, LLC*, 2013 U.S. Dist. LEXIS 47018, *14 (W.D. La. 2012); *Albanil v. Coast 2 Coast, Inc.*, 444 Fed. Appx. 788, 805 n.16 (5th Cir. 2011) (nothing that the district court granted summary judgment based on Plaintiff's failure to meet its burden to show a violation of the minimum-wage requirement, as "the district court found that the workers . . . had not shown that their total number of weekly hours worked divided by their weekly pay was less than minimum wage" and accepting this unchallenged standard for purposes of reconsideration).

In this case, Plaintiffs attempt to satisfy *Iqbal/Twombly* standards with respect to their minimum wage claims.  They averaged the number of hours worked per week; the amount of their gross pay; and the amount of chargebacks and business expenses.  In doing so, Plaintiffs have provided facts sufficient to calculate whether their pay in fact met the minimum wage.  This is done by dividing their weekly pay by the number of hours worked to see if their hourly rate exceeds the minimum wage.  The allegations as to 8 of the 16 plaintiffs in this case – Z. Dogan, Phillips, Riley, Roden, Vardaman, Sanders, Thomas and Gomez – demonstrate that they have failed to state claims for relief under Rule 12(b)(6) for violation of the minimum wage provisions of the FLSA.  *See* Ex. A and *supra* pp. 2.

Accordingly, this Court should find that these 8 plaintiffs have failed to state a claim for minimum wage violations under the FLSA.  Their claims must therefore be dismissed.

## IV.   CONCLUSION

Therefore, for these reasons, DIRECTV respectfully requests this Court to dismiss Plaintiffs' allegations against DIRECTV on the basis they have not stated a plausible claim for violations of the FLSA under "joint employment" theory or otherwise. DIRECTV further requests, as appropriate, this Court to dismiss the minimum wage claims asserted by Plaintiffs Z. Dogan, Phillips, Riley, Roden, Vardaman, Sanders, Thomas and Gomez.

Respectfully submitted, this 14th day of April, 2015

                                           DIRECTV, LLC

                              BY:   /s/Robert B. Ireland, III
                                            ROBERT B. IRELAND, III

OF COUNSEL:

Robert B. Ireland, III, MSB # 100708
Watkins & Eager PLLC
400 E Capitol Street (39201)
Post Office Box 650
Jackson, Mississippi 39205-0650
Telephone: (601) 965-1900
Facsimile: (601) 965-1901
E-Mail: rireland@watkinseager.com

**CERTIFICATE OF SERVICE**

I do hereby certify that I electronically filed the foregoing document with the Clerk of Court using the ECF system, which sent notification of such filing to the following:

    Cynthia D. Burney
    cindyburney@bellsouth.net

    Todd C. Werts
    werts@learwerts.com

    Jesse B. Hearin, III
    jbhearin@gmail.com

    *Attorney for Plaintiffs*

    Tammy L. Baker
    bakert@jacksonlewis.com

    Michael Tiliakos
    mtiliakos@duanemorris.com

    Natalie F. Hrubos
    nfhrubos@duanemorris.com

    Christina Fletcher
    cjfletcher@duanemorris.com

    *Attorneys for Multiband Corp.*

This 14th day of April, 2015.

                                          /s/Robert B. Ireland, III
                                          ROBERT B. IRELAND, III